IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOSEPH BREELAND, | : | Civil No. 3:12-CV-2511 |
| | : | |
| Plaintiff | : | (Judge Kosik) |
| | : | |
| v. | : | (Magistrate Judge Carlson) |
| | : | |
| SGT. COOK, | : | |
| | : | |
| Defendant | : | |

## REPORT AND RECOMMENDATION

### I.    Introduction

Video surveillance is an increasingly ubiquitous aspect of modern prison life.

Today, much of institutional life is electronically monitored and many institutional

encounters are recorded electronically.  In recognition of this fact, where critical

events at issue in a prisoner civil rights lawsuit have been unambiguously captured

on videotape, the Court is obliged to consider that videotaped evidence in

determining whether there is any genuine dispute as to material facts, and must view

the facts in the light depicted by the videotape.  See Scott v. Harris, 550 U.S. 372,

380-81 (2007) (reversing court of appeals ruling with respect to application of

qualified immunity in an excessive force case, noting that the court of appeals erred

by accepting a version of facts that was shown to be a "visible fiction" and

admonishing that the lower court "should have viewed the facts in the light depicted by the videotape."). <u>Tindell v. Beard</u>, 351 F.App'x 591 (3d Cir. 2009).

There are, however, limits on the extent to which the unblinking eye of the video camera can resolve these factual disputes. This case aptly illustrates some of those limitations. In this case the defendant has moved for summary judgment on an excessive force claim, as to which the parties present starkly contrasting factual narratives regarding what transpired, and where the videotape evidence only captures the aftermath of the alleged incident, memorializing the aftermath of this episode in ways which, in some respects, simply serve to highlight the factual disputes in this case.

## II.    Statement of Facts and of the Case

This case, which comes before the Court on the defendant's motion for summary judgment, arises out of a June 14, 2012, unplanned use of force incident at the State Correctional Institute, (SCI) Camp Hill. On June 12, 2012, prison officials observed that the plaintiff, Joseph Breeland, an inmate at SCI-Camp Hill had torn his prison-issued jumpsuit, and fashioned a noose from the torn shards of the jumpsuit which he had affixed to his cell door. Fearing that Breeland might harm himself, prison staff, including the defendant Sergeant Cook, initiated an unplanned use of force, entering Breeland's cell and restraining him.

Because this use of force was unplanned, prison staff did not record their initial entry into the cell, and the parties provide starkly different accounts of what transpired inside Breeland's cell prior to the arrival of a hand-held video camera on the scene.  For his part, Breeland insists that Sergeant Cook struck him, and sexually assaulted him by digitally sodomizing the plaintiff while restraining Breeland. Sergeant Cook and other prison staff, in turn, adamantly deny these allegations or any claims by Breeland that excessive force was used against him.

While the initial cell entry was not videotaped, a video exists depicting the aftermath of this incident.  That video shows Breeland, stripped to his undergarments, restrained by staff, including Sergeant Cook, and lying face down on his cell bed. During the videotaped portion of the encounter, prison staff remove a looped cloth from Breeland's cell, confiscate Breeland's mattress, and remove Breeland's clothing. Prison staff then remove Breeland's restraints and exit his cell.  Nothing in this videotaped aftermath of the initial cell entry reflects the use of excessive force, however, in the course of this brief video Breeland repeatedly and vociferously complains that he was sexually assaulted by staff moments before the video camera arrived on the scene.  Breeland's contemporaneous complaints that he has been assaulted are then oddly juxtaposed with other statements by Breeland, who expresses

his intent to sue staff and on at least one occasion appears to brag about his past ability to assault others without being detected by video surveillance.

Arguing that "[t]he videotape of the unplanned use of force blatantly contradicts plaintiff's allegation that defendant Cook physically and sexually assaulted him," (Doc. 38, ¶17), the defendant has moved for summary judgment on this excessive force claim. This motion is fully briefed, (Docs. 36-39, 42 and 43), and is ripe for resolution. Because we find that the extant video does not resolve what are disputed material issues of fact in this litigation, but rather simply highlights those disputes while providing some basis for assessing the credibility of the parties' competing factual narratives as a matter of fact, it is recommended that this summary judgment motion be denied.

### III.  <u>Discussion</u>

### A.  <u>The Videotape Evidence in This Case Does Not Permit Entry of Judgment as a Matter of Law</u>

The defendant has moved for judgment pursuant to Rule 56(a) of the Federal Rules of Civil Procedure, which provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. Rule 56(a). Through summary adjudication a court is empowered to dispose of those

claims that do not present a "genuine dispute as to any material fact," Fed. R. Civ. P. 56(a), and for which a trial would be "an empty and unnecessary formality." Univac Dental Co. v. Dentsply Int'l, Inc., No. 07-0493, 2010 U.S. Dist. LEXIS 31615, at *4 (M.D. Pa. Mar. 31, 2010). The substantive law identifies which facts are material, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine only if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a verdict for the non-moving party. Id. at 248-49.

The moving party has the initial burden of identifying evidence that it believes shows an absence of a genuine issue of material fact. Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d 135, 145-46 (3d Cir. 2004). Once the moving party has shown that there is an absence of evidence to support the nonmoving party's claims, "the non-moving party must rebut the motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal memoranda, or oral argument." Berckeley Inv. Group. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir. 2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden at trial," summary judgment

is appropriate. Celotex, 477 U.S. at 322. Summary judgment is also appropriate if the non-moving party provides merely colorable, conclusory, or speculative evidence. Anderson, 477 U.S. at 249. There must be more than a scintilla of evidence supporting the nonmoving party and more than some metaphysical doubt as to the material facts. Id. at 252; see also, Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In making this determination, the Court must "consider all evidence in the light most favorable to the party opposing the motion." A.W. v. Jersey City Pub. Schs., 486 F.3d 791, 794 (3d Cir. 2007).

Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Moreover, a party who seeks to resist a summary judgment motion by citing to disputed material issues of fact must show by competent evidence that such factual disputes exist. Further, "only evidence which is admissible at trial may be considered in ruling on a motion for summary judgment." Countryside Oil Co., Inc. v. Travelers Ins. Co., 928 F.Supp. 474, 482 (D.N.J.1995).

Similarly, it is well-settled that: "[o]ne cannot create an issue of fact merely by . . . denying averments . . . without producing any supporting evidence of the denials." Thimons v. PNC Bank, NA, 254 F.App'x 896, 899 (3d Cir. 2007)(citation omitted). Thus, "[w]hen a motion for summary judgment is made and supported . .

., an adverse party may not rest upon mere allegations or denial." <u>Fireman's Ins. Co. Of Newark NJ v. DuFresne</u>, 676 F.2d 965, 968 (3d Cir. 1982), <u>see</u> <u>Sunshine Books, Ltd. v. Temple University</u>, 697 F.2d 90, 96 (3d Cir. 1982)."  [A] mere denial is insufficient to raise a disputed issue of fact, and an unsubstantiated doubt as to the veracity of the opposing affidavit is also not sufficient." <u>Lockhart v. Hoenstine</u>, 411 F.2d 455, 458 (3d Cir. 1969).  Furthermore, "a party resisting a [Rule 56] motion cannot expect to rely merely upon bare assertions, conclusory allegations or suspicions." <u>Gans v. Mundy</u>, 762 F.2d 338, 341 (3d Cir. 1985)(citing <u>Ness v. Marshall</u>, 660 F.2d 517, 519 (3d Cir. 1981)).

Finally, in a case such as this, where critical events at issue have been captured on videotape, the Court is obliged to consider that videotaped evidence in determining whether there is any genuine dispute as to material facts.  In fact, it is clear that, in this setting, we must view the facts in the light depicted by the videotape.  <u>See</u> <u>Scott v. Harris</u>, 550 U.S. 372, 380-81 (2007) (reversing court of appeals ruling with respect to application of qualified immunity in an excessive force case, noting that the court of appeals erred by accepting a version of facts that was shown to be a "visible fiction" and admonishing that the lower court "should have viewed the facts in the light depicted by the videotape.").  Where a videotape completely refutes an inmate's claims that excessive force was used against him, and

the video evidence does not permit an inference that prison officials acted maliciously and sadistically, summary judgment is appropriate.  Tindell v. Beard, 351 F.App'x 591 (3d Cir. 2009).

However, this general legal principle is tempered by one crucial corollary.  Any assessment of the probative value of video evidence must take into account that the camera, while an immutable witness, can only describe events from the particular perspective of the video's lens.  Thus, the camera only allows us to see what the camera observed and recorded, and our assessment of the evidence must be undertaken through the prism of the camera's perspective, subject to all of the vagaries and limitations of that perspective.  This fact has led commentators to caution courts to refrain from a reflexive reliance on equivocal video evidence when reaching ultimate legal conclusions.  See Jessica Silbey, Cross-Examining Film, 8 U. Md. L.J. Race, Religion, Gender & Class 17 (2008); Martin A. Schwartz et. al., Analysis of Videotape Evidence in Police Misconduct Cases, 25 Touro L. Rev. 857 (2009).[1]

---

[1]These commentators often illustrate the way in which video's limited perspective can occasionally distort understanding and color the search for the truth by citing the classic 1920 German Expressionist silent movie, *The Cabinet of Dr. Caligari*, a film which depicts a disturbing factual narrative from the protagonist's perspective, only to reveal a broader perspective in the film's closing sequence, which discloses that the protagonist is insane, that the events described by the protagonist have taken place at an asylum where the protagonist is

This case aptly illustrates one of the limitations on video evidence as a means of resolving factual disputes as a matter of law.  Contrary to the defendant's assertion that "[t]he videotape of the unplanned use of force blatantly contradicts plaintiff's allegation that defendant Cook physically and sexually assaulted him," (Doc. 38, ¶17), the limited temporal perspective of the video does not permit any definitive conclusions regarding what transpired during the initial cell entry.  Simply put, the video does not definitively tell us what happened before the video began.  Instead, we are presented with the aftermath of this incident:  images of a subdued inmate, stripped to his shorts, who is complaining that he has very recently been sexually assaulted.

While the defendant argues with great force that Breeland's demeanor and his other admissions depicted on the video undermine the credibility of his contemporaneous claims, this argument invites us to indulge in an exercise which we are forbidden to undertake.  It is well-settled that, in assessing a summary judgment motion, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence.  Lytle v. Household Mfg., Inc., 494 U.S. 545, 554–555, 110 S.Ct. 1331, 108 L.Ed.2d 504

---

confined, and that much of what was initially presented by the protagonist as real was simply imagined.

(1990); <u>Liberty Lobby, Inc., supra</u>, at 254, 106 S.Ct. 2505; <u>Continental Ore Co. v. Union Carbide & Carbon Corp</u>., 370 U.S. 690, 696, n. 6, 82 S.Ct. 1404, 8 L.Ed.2d 777 (1962). 'Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge.' <u>Liberty Lobby, supra</u>, at 255, 106 S.Ct. 2505." <u>Reeves v. Sanderson Plumbing Products, Inc.</u>, 530 U.S. 133, 150-51(2000). Therefore, we simply may not engage in the credibility assessment invited by the defendant, but must reserve that task to the ultimate fact-finder in this case.

Because the factual record in this case, as depicted on the video, does not resolve what are disputed material issues of fact in this litigation, but only highlights those disputes while providing some substantial basis for assessing the credibility of the parties' competing factual narratives as a matter of fact, summary judgment is not appropriate in this case, and the defendant's motion for summary judgment should be denied.

## IV.   <u>Recommendation</u>

Accordingly, for the foregoing reasons, IT IS RECOMMENDED that the defendants' motion for summary judgment (Doc. 36) be DENIED.

The parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof. Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The briefing requirements set forth in Local Rule 72.2 shall apply. A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record. The judge may also receive further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this 29th day of January, 2014.


_**S/Martin C. Carlson**_
Martin C. Carlson
United States Magistrate Judge

11